UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

SOFIA URQUIZO,

*Plaintiff*,

– against –

COMMUNITY LOAN SERVICING LLC, *formerly known as Bayview Loan Servicing LLC*; FCI LENDER SERVICES, INC.; NATIONSTAR MORTGAGE LLC, *doing business as Mr. Cooper*; NEWREZ LLC, *doing business as Shellpoint Mortgage Servicing*,

*Defendants*.

---

**MEMORANDUM & ORDER**
24-cv-00909 (NCM) (JAM)

**NATASHA C. MERLE**, United States District Judge:

Before the Court are defendants' motions to dismiss plaintiff's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1] Plaintiff Sofia Urquizo brings this action against defendants[2] Community Loan Servicing LLC ("CLS"), FCI Lender Services, Inc. ("FCI"), and Nationstar Mortgage LLC ("Nationstar") for violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq*., and breach of

---

[1]    The Court hereinafter refers to the Memorandum of Law in Support of CLS's Motion to Dismiss, ECF No. 47-1, as the "CLS Motion"; the Memorandum of Law in Support of FCI's Motion to Dismiss, ECF No. 44-1, as the "FCI Motion"; the Memorandum of Law in Support of Nationstar's Motion to Dismiss, ECF No. 41-1, as the "Nationstar Motion"; plaintiff's Memorandum of Law in Opposition to Defendants' Motions to Dismiss, ECF No. 42, as the "Opposition"; the Reply Memorandum of Law in Support of CLS's Motion to Dismiss, ECF No. 49, as the "CLS Reply"; the Reply Memorandum of Law in Support of FCI's Motion to Dismiss, ECF No. 46, as the "FCI Reply"; and the Reply Memorandum of Law in Support of Nationstar's Motion to Dismiss, ECF No. 43, as the "Nationstar Reply."

[2]    Pursuant to a stipulation of dismissal entered into by plaintiff and defendant Newrez LLC, all claims in this action against defendant Newrez LLC, doing business as Shellpoint Mortgage Servicing ("Shellpoint"), have been dismissed without prejudice. ECF No. 28.

contract arising out of defendants' alleged failure to honor a loan assumption and modification agreement between plaintiff and CLS. For the reasons stated below, defendants' motions are **DENIED** except insofar as plaintiff's RESPA claim against FCI is **DISMISSED**.

## BACKGROUND

In 2004, plaintiff's husband, Miguel Mena, purchased a two-family home located in Far Rockaway, New York, for $439,000.00. First Amended Complaint ("FAC") ¶¶ 20–22, ECF No. 19. To do so, he entered into two mortgage agreements with First United Mortgage Banking Corporation, which represented 95% of the financing for the purchase. FAC ¶ 22. One of the two mortgages, for $333,700.00, is referred to as the primary mortgage and is the subject of this action. FAC ¶ 23. Initially, the house was only in Mena's name; six months after the purchase, plaintiff's name was added to the title. FAC ¶ 24. The couple had been married since 2000. FAC ¶ 21.

By 2006, the primary mortgage was assigned to JPMorgan Chase Bank, N.A. ("Chase"). FAC ¶ 25. Mena entered into a Consolidation, Extension and Modification Agreement ("CEMA") with Chase in June 2006. FAC ¶ 25. As part of the CEMA, plaintiff was added as a borrower under the primary mortgage because her name was now on the title to the house. FAC ¶ 25. Plaintiff is a signatory on the CEMA. FAC ¶ 25. In May 2013, the parties modified the primary mortgage agreement through a loan modification with Chase, on which plaintiff was again listed as a borrower and signatory. FAC ¶ 26.

Mena died in July 2014. FAC ¶ 27. Faced with financial difficulty after her husband's passing, plaintiff attempted to explore loss mitigation options with Chase. FAC ¶¶ 28–29. Plaintiff attempted to work with Chase to address the loan payments, but Chase refused to speak with her and claimed she was not a borrower on the loan. FAC ¶

2

31. The servicing of the loan was then transferred from Chase to Bayview Loan Servicing, and later to CLS in 2016. FAC ¶ 32. For years, plaintiff continued to attempt to "establish her status as a borrower or a successor-in-interest" and manage her loan payments, without success. FAC ¶¶ 32–33.

Plaintiff alleges that on May 6, 2022, CLS finally approved a loan modification application and offered an agreement under which she would simultaneously assume and modify the primary mortgage ("Agreement"). FAC ¶ 34. Pursuant to the Agreement, the loan balance increased to $462,954.39 and was re-amortized over 40 years with a fixed interest rate of 2.875%. FAC ¶ 35. Under the Agreement, the estimated monthly payment was $2,298.00. FAC ¶ 35. As part of the Agreement, CLS sent plaintiff the following documents: Loan Estimate; Equal Credit Opportunity Act Notice; New York Fair Credit Reporting Act Disclosure; Borrower's Certification and Authorization; Mortgage Fraud Is Investigated by the FBI Warning; Errors and Omissions/Compliance Agreement; Acknowledgment of Receipt of Loan Estimate; and Acknowledgment of Intent to Proceed. FAC ¶ 36. Plaintiff signed and faxed the executed documents to CLS on May 13, 2022. FAC ¶ 39.

In June 2022, CLS transferred service of the loan to Nationstar. FAC ¶ 40. In December 2022, Nationstar transferred service of the loan to Shellpoint. FAC ¶ 52. In January 2023, Shellpoint transferred service of the loan to FCI. FAC ¶ 54. Between June 2022 and June 2023, plaintiff sent several notices of error to each successive loan servicer, alleging that they had failed to transfer over and comply with the Agreement. FAC ¶¶ 42–80.

Specifically, plaintiff sent a letter to CLS and Nationstar on June 8, 2022, in which she demanded that Nationstar honor the Agreement ("First Letter"). FAC ¶ 42. CLS did

not respond to the First Letter. FAC ¶ 45. Nationstar responded the next month, stating that CLS had informed it that the "modification was denied April 22, 2022" because "the assumption documents were never returned." FAC ¶ 46. Nationstar directed plaintiff to submit a new application for a loan modification and assumption with Nationstar. FAC ¶ 46. Plaintiff then sent a second letter to Nationstar and explained that while an April 2022 application had been denied, she later entered into the Agreement, which CLS offered a month later in May 2022 ("Second Letter"). FAC ¶¶ 47–48. Nationstar stated that it would respond to the Second Letter by September 2, 2022, but never did so. FAC ¶¶ 49–50.

Eventually, plaintiff received a new loan modification offer in February 2023 from the administrator of the then owner of the primary mortgage, RCO Trust. FAC ¶¶ 51, 58–60. The terms of the offer included a higher principal balance, interest rate, and monthly payment than the terms of the Agreement. FAC ¶ 60. RCO Trust then offered another modification in March 2023 under which the principal balance, interest rate, and monthly payment would be even higher than the February 2023 offer. FAC ¶¶ 61–62. Plaintiff responded by informing RCO Trust's administrator of the Agreement and its terms. FAC ¶ 63. FCI then represented in an email that FCI had no "evidence that CLS received the faxed, signed pre-closing documents on May 13, 2022." FAC ¶ 65. Plaintiff again demanded that FCI honor the terms of the Agreement pursuant to its RESPA obligations as a loan servicer. FAC ¶ 66. FCI then offered another loan modification with further unfavorable terms, including capitalized interest and higher principal balance, interest rate, and monthly payment. FAC ¶ 67.

Plaintiff sent a third letter to CLS, Nationstar, and Shellpoint on April 20, 2023, requesting all documents relating to the Agreement ("Third Letter"). FAC ¶ 68. CLS did

not respond; Nationstar stated that it would respond at a later date. FAC ¶¶ 70–71. Shellpoint responded the next month by referring plaintiff to Nationstar's prior responses in June and August 2022. FAC ¶ 73. Plaintiff then sent a fourth letter to FCI on June 20, 2023 ("Fourth Letter"). FAC ¶ 74. FCI responded the next month by stating that it had no evidence that CLS received plaintiff's executed documents in May 2022 and there was no loss mitigation agreement it need honor. FAC ¶ 77. RCO Trust then offered another loan modification, even more unfavorable to plaintiff than the last, which plaintiff declined. FAC ¶¶ 78–80.

Plaintiff alleges that defendants' failures to correct the alleged servicing errors have caused her injuries, including money damages and "extreme stress and anxiety occasioned by the risk of the loss of her family's home to a foreclosure." FAC ¶¶ 100, 112, 124, 136. Plaintiff further alleges that defendant "FCI caused a foreclosure action to be filed" against her "in the name of the trust for whom [FCI] acts as agent." FAC ¶ 83. The state foreclosure action was filed in March 2024, as *Wilmington Savings Fund Society, FSB, as Owner Trustee of the Residential Credit Opportunities Trust VIII-A v. Sofia Urquizo, Individually and as Executor of the Estate of Miguel A. Mena a/k/a Miguel Mena, et al.*, in the Supreme Court of New York, County of Queens (Index Number 706385/2024) ("Foreclosure Action"). FAC ¶ 83. The relief sought in the Foreclosure Action includes payment of the "remaining balance of the loan" on plaintiff's house. FAC ¶ 84.

## LEGAL STANDARD

A court must dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) when it "lacks the statutory or constitutional power to adjudicate it." *Huntress v. United States*, 810 F. App'x 74, 75–76 (2d Cir. 2020) (quoting *Makarova v. United States*,

201 F.3d 110, 113 (2d Cir. 2000)).[3] In making this determination, the Court "must accept as true all material factual allegations in the complaint." *Berger v. L.L. Bean, Inc.*, 351 F. Supp. 3d 256, 260 (E.D.N.Y. 2018) (quoting *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004)). A court may also "refer to evidence outside the pleadings" in its assessment. *Makarova*, 201 F.3d at 113.

When deciding a motion to dismiss based on Rule 12(b)(6), a court must again "accept[] all factual claims in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014). Factual disputes are typically not the subject of the Court's analysis, as Rule 12 motions "probe the legal, not the factual, sufficiency of a complaint." *Plastic Surgery Grp., P.C. v. United Healthcare Ins. Co. of N.Y., Inc.*, 64 F. Supp. 3d 459, 468–69 (E.D.N.Y. 2014). That is, "the issue" on a motion to dismiss "is not whether a plaintiff will ultimately prevail," but instead whether a plaintiff is "entitled to offer evidence to support the claims." *Sikhs for Just. v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012). Accordingly, "[d]ismissal is inappropriate unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." *Fat Brands Inc. v. Ramjeet*, 75 F.4th 118, 125 (2d Cir. 2023).

In order to survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must state "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Matson v.*

---

[3]    Throughout this Opinion, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

*Bd. of Educ. of City Sch. Dist. of N.Y.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678). Although the Court takes all factual allegations contained in the complaint as true, it does not do so for legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" in a complaint. *Iqbal*, 556 U.S. at 678.

When a court is faced with a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, the Court "must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction." *Pressley v. City of New York*, No. 11-cv-03234, 2013 WL 145747, at *5 (E.D.N.Y. Jan. 14, 2013); *see also United States ex rel. Kreindler & Kreindler v. United Techs. Corp.*, 985 F.2d 1148, 1155–56 (2d Cir. 1993).

## DISCUSSION

### I.   *Colorado River* Abstention

Defendants urge the Court to abstain from exercising jurisdiction over this action pursuant to the *Colorado River* doctrine. Federal courts have "a virtually unflagging obligation to exercise" their subject matter jurisdiction. *Mochary v. Bergstein*, 42 F.4th 80, 84 (2d Cir. 2022). Accordingly, "[a]bstaining from exercising federal jurisdiction is the exception, not the rule." *Id.* Only in "a few extraordinary and narrow exceptions" may a federal court find reason to decline its "duty to exercise its jurisdiction"—and even then, "the balance is heavily weighted in favor of the exercise of jurisdiction." *Id.* at 84–85. One such exception lies in the *Colorado River* doctrine. Under this doctrine, "a federal court may abstain from exercising jurisdiction where an existing parallel state-court litigation would accomplish a comprehensive disposition of litigation." *Id.* at 85 (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976)). Unless specific

abstention requirements are met, the Court has "little to no discretion" and may not abstain from exercising its jurisdiction. *Mochary*, 42 F.4th at 85.

A court assessing whether abstention under *Colorado River* is appropriate proceeds in two steps. First, the Court must "make a threshold determination that the concurrent proceedings are parallel," meaning that "substantially the same parties are contemporaneously litigating substantially the same issue in another forum." *Mochary*, 42 F.4th at 85. "[T]he mere potential for conflict in the results of adjudications, does not, without more, warrant staying exercise of federal jurisdiction." *Colorado River*, 424 U.S. at 816. Second, if the proceedings are parallel, the Court must "careful[ly] balance" six factors, including the convenience and adequacy of the state and federal fora:

> (1) whether the controversy involves a res over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed, and whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights.

*Mochary*, 42 F.4th at 85. No one factor is dispositive, and "[o]nly the clearest of justifications will warrant dismissal." *Id.* at 86. Where a factor is neutral, it provides a "basis for retaining jurisdiction, not for yielding it." *Woodford v. Cmty. Action Agency of Greene Cnty., Inc.*, 239 F.3d 517, 522 (2d Cir. 2001).

Defendants argue that the doctrine applies because the same loan at issue in this action is the subject of the state Foreclosure Action. CLS Mot. 12–13; FCI Mot. 8–11; Nationstar Mot. 7–10.[4] Plaintiff counters that *Colorado River* abstention is not applicable

---

[4]    Throughout this Order, page numbers for docket filings refer to the page numbers assigned in ECF filing headers.

here because the Foreclosure Action presents a different legal issue between different parties, was filed after this action, and does not provide a proper forum for RESPA claims. Opp'n 21–32. The Court finds that this action is not parallel to the state foreclosure action and, regardless, the factors weigh against abstention.

*First*, the parties are not the same: the plaintiff in the foreclosure action—the *holder* of plaintiff's mortgage—is not a party to this action, and the defendants in this action—the *servicers* of plaintiff's mortgage—are not parties to the foreclosure action. Specifically, the plaintiff in the foreclosure action is Wilmington Savings Fund Society, FSB ("Wilmington"), the owner of RCO Trust.[5] Bliss Decl. ¶ 4, ECF No. 47-2. Wilmington is not a party to this action.[6]

Although CLS and FCI are correct that Wilmington may share a "congruent interest" with defendants in enforcing the pre-Agreement terms of the loan (presumably, the CEMA), those overlapping interests do not necessarily render these parties substantially the same for purposes of abstention. *See* FCI Mot. 9; CLS Reply 6; *see also* CLS Mot. 13 (arguing that defendants appear in this action "in their capacity as [Wilmington's] agents"). Nor is the caselaw defendants rely on persuasive. For example, in *Potente v. Capital One*, the court found the original mortgagee shared "congruent" interests with the current mortgagee due to a corporate acquisition of one by the other. *Potente v. Cap. One, N.A.*, No. 16-cv-03570, 2018 WL 1882848, at *4, *2 n.1 (E.D.N.Y.

---

[5]    Although plaintiff alleges that "FCI filed the action in the name of the trust for whom it acts as agent," FAC ¶ 83, the Court discerns no evidence from the face of the complaint in the Foreclosure Action that FCI is the plaintiff in that action.

[6]    As evidenced *supra*, note 5, the pleadings introduce some ambiguity as to whether Wilmington or FCI filed the Foreclosure Action. *See* FAC ¶ 88 (noting that plaintiff has suffered injury in part because "FCI . . . filed a foreclosure action"). However, even if FCI did file the Foreclosure Action, one overlapping party would not require abstention pursuant to *Colorado River*.

Apr. 19, 2018). Here, rather than one mortgagee stepping into the shoes of another as was the case in *Potente*, defendants are servicers of the mortgagee's loan. That is, defendants occupy a distinct role from Wilmington—indeed, they work on behalf of the creditor in the discrete function of servicing plaintiff's loan. For example, as servicers, defendants are subject to different regulatory schemes, including RESPA, and their ultimate interest lies in properly administering the service of loans owned by another, here, Wilmington, rather than collecting a debt owed directly to them.

*Second*, the issues and relief sought in this action are not substantially the same as those in the Foreclosure Action. In the latter, Wilmington seeks to enforce the pre-Agreement loan and not the terms of the loan as plaintiff in this action alleges were later modified in the Agreement. *See* Foreclosure Action Compl., Opp'n Ex. O, ECF No. 45-16. In her answer to that complaint, Ms. Urquizo states several affirmative defenses and cross-claims for violations of state property laws. Foreclosure Action Answer, ECF No. 13.[7] She does not rely on RESPA or the merits of the Agreement and only mentions the Agreement in alleging that counsel for Wilmington failed to comply with state procedural law requiring the inclusion of all loan documents in the pleading. Foreclosure Action Answer ¶¶ 41–43.

Accordingly, the Court is not persuaded that the foreclosure action necessarily requires the state court to determine whether the Agreement was enforceable in order to determine whether Ms. Urquizo has defaulted on the pre-Agreement loan. *Cf. Mochary*,

---

[7]    While the parties did not attach Ms. Urquizo's state court answer to their motion papers, the Court takes judicial notice of the filing. Where courts take judicial notice of filings outside of the pleadings, they may do so only insofar as "what statements [the filings] contained" but "not for the truth of the matters asserted" therein. *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). Accordingly, the Court only considers the fact that plaintiff stated these defenses and claims, not the truth of those statements.

42 F.4th at 86 ("Mere commonality in subject matter does not render actions parallel.");
*Renois v. WVMF Funding, LLC*, No. 20-cv-09281, 2024 WL 1313492, at *6 (S.D.N.Y. Mar. 27, 2024) (declining to abstain pursuant to Colo*rado River* in part because "though the two actions clearly overlap in that they both relate to the Loan, there is no indication or allegation that the State Foreclosure Action considered any of the issues raised here—namely, whether . . . sub-servicing the loan violated various provisions of state and federal law"). Furthermore, as plaintiff points out, the RESPA claims do not arise out the original loan and therefore do not fall into the scope of the Foreclosure Action. *See* Opp'n 28 ("A favorable ruling in the Foreclosure Action might restore [plaintiff's] property rights but would not address the RESPA and Regulation X violations related to Defendants' failure to honor the Agreement.").

Even if the proceedings were parallel, the *Colorado River* factors collectively counsel for exercise of this Court's jurisdiction. Several factors weigh against abstention: contrary to FCI's contention, the Foreclosure Action was filed after the initial complaint in this action, *compare* Opp'n Ex. O (state court complaint filed March 25, 2024) *with* ECF No. 1 (complaint filed February 6, 2024[8]); the Foreclosure Action has not proceeded beyond the filing of the complaint and an answer, *see generally* Foreclosure Action Dkt.; and plaintiff's RESPA claims are based on federal law. Some factors counsel for abstention: plaintiff also brings breach of contract claims in this action that arise out of state law; there is no contention that the New York state courts do not provide an adequate forum; and a stay or dismissal of this action *might* allow the state court to adjudicate most

---

[8]    Although plaintiff filed an amended complaint, which added claims for breach of contract and specific performance arising out of the same factual conduct as the RESPA violations, the amendments relate back to the filing of the original complaint. *See* Fed. R. Civ. P. 15(c)(1)(B).

or all of plaintiffs' claims in one action thereby avoiding piecemeal litigation. Yet, as noted *supra*, that possibility is only that—there is no indication that plaintiff's RESPA claims will have the opportunity to be heard in the state court, or that continuing with this action would necessarily lead to piecemeal litigation where the actions differ between the enforcement and servicing of the loan. And while the Foreclosure Action involves a *res*—plaintiff's house—the instant action arises out of contractual and statutory rights not tied to the specific property itself. The final factor is neutral and therefore weighs in favor of exercising jurisdiction: there is no indication that this Court provides a less convenient forum for the parties than does the state court. On balance, these factors do not support abstention. In sum, whereas the Foreclosure Action concerns a mortgage default dispute between Wilmington and Ms. Urquizo, this action states specific claims under federal law, was filed prior to the state foreclosure action, and does not currently risk inconsistent judgments.

Accordingly, the Court declines to abstain from exercising its federal question jurisdiction pursuant to *Colorado River*.

## II.  RESPA Claims

RESPA "provides a framework for borrowers to remedy errors relating to the servicing of their mortgage loans." *Naimoli v. Ocwen Loan Servicing, LLC*, 22 F.4th 376, 379 (2d Cir. 2022). It is a "consumer protection statute" subject to implementing regulations issued by the Consumer Financial Protection Bureau. *Id.* at 381. In particular, Regulation X specifies that borrowers may provide written notice to "mortgage servicers of possible account errors," to which the servicers must respond if the errors are "covered." *Id.* at 381–82 (citing 12 C.F.R. § 1024.35). Regulation X "enumerates ten specific covered errors" along with "an eleventh catch-all provision, which encompasses

'any other error relating to the servicing of a borrower's mortgage loan.'" *Id.* at 382 (citing 12 C.F.R. § 1024.35(b)(11)).

"To state a claim under RESPA, a plaintiff must allege that the defendant failed to comply with specific RESPA provisions and identify damages that she sustained as a result of the defendant's alleged RESPA violations." *Bocci v. Nationstar Mortg. LLC*, No. 23-cv-01780, 2024 WL 3813756, at *8 (S.D.N.Y. June 28, 2024), *report and recommendation adopted*, No. 23-cv-01780, 2024 WL 4326932 (Sept. 27, 2024). Defendants primarily challenge plaintiff's claims on the ground that RESPA only applies to loan servicing and not loan modification. FCI Mot. 12–13; CLS Mot. 14–15; Nationstar Mot. 12–13. For the reasons stated below, the Court finds that RESPA applies to plaintiff's claims, and plaintiff has sufficiently pleaded RESPA violations.

### A. The Agreement

As a threshold matter, plaintiff does not allege that defendants erred in making a determination on plaintiff's loss mitigation application. Such a claim would likely fail pursuant to RESPA. *See Naimoli*, 22 F.4th at 384 ("All parties agree that a loan servicer's failure to properly evaluate a borrower for a loss mitigation option is not a covered error under § 1024.35(b)."). To the contrary, plaintiff alleges that her loss mitigation application was approved and resulted in a loan modification agreement between CLS and plaintiff. FAC ¶ 34; *see also* Opp'n Ex. C, ECF No. 45-4. However, CLS and FCI contend that plaintiff never accepted the Agreement such that no contract was formed that would provide the basis for plaintiff's RESPA claims. FCI Mot. 17; CLS Mot. 18. Accordingly, the Court must first assess whether plaintiff has sufficiently alleged that the parties entered into the Agreement.

To assess whether a contract exists pursuant to New York law, "the first step is to determine whether there is a sufficiently definite offer such that" a party's "unequivocal acceptance" is sufficient to bind the parties. *Kolchins v. Evolution Markets, Inc.*, 31 N.Y.3d 100, 106 (2018). Sufficient definiteness as to material terms is required in order to "assure[] that courts will not impose contractual obligations when the parties did not intend" to enter into a binding agreement. *Id*. Where the parties' "course of conduct and communications" form the basis of the disagreement as to intent to enter a contract, *id*., the court must consider "the objective manifestations of the intent of the parties as gathered by their expressed words and deeds," *CoraMed USA, LLC v. Alexion Pharms., Inc.*, 695 F. Supp. 3d 251, 260 (E.D.N.Y. 2023). This requires a "totality" inquiry, including assessment of "the attendant circumstances, the situation of the parties, and the objectives they were striving to attain." *CoraMed USA, LLC*, 695 F. Supp. 3d at 260.

Here, plaintiff has sufficiently alleged that she and CLS intended to enter into a loan modification agreement based on the express material terms offered by CLS in May 2022. *See* FAC ¶ 34. Specifically, plaintiff alleges that she submitted an application to CLS to assume and modify the loan, which CLS approved. FAC ¶¶ 33–34. Plaintiff alleges that CLS then provided the following documents: Loan Estimate; Equal Credit Opportunity Act Notice; New York Fair Credit Reporting Act Disclosure; Borrower's Certification and Authorization; Mortgage Fraud Is Investigated by the FBI Warning; Errors and Omissions/Compliance Agreement; Acknowledgment of Receipt of Loan Estimate; and Acknowledgment of Intent to Proceed. FAC ¶ 36. Plaintiff also alleges that CLS provided specific "underlying terms" of the Agreement at this time: "new unpaid principal balance of $462,954.39, re-amortized the loan over 40 years with a fixed interest rate of 2.875%, and provided an estimated monthly payment of $2,298.00." FAC ¶ 35. Plaintiff further

alleges that she accepted the loan modification agreement by signing and returning the executed documents via fax to CLS.[9] FAC ¶ 39. These actions by CLS and plaintiff constitute express and "objective manifestations of the intent" to enter into the Agreement, which was offered in sufficiently definite terms such that plaintiff's "unequivocal acceptance" was sufficient to bind the parties. *See Kolchins*, 31 N.Y.3d at 106.

CLS contends that the Agreement could not have been accepted as plaintiff alleges because the applicable Fannie Mae guidelines "precluded the simultaneous assumption and modification of the loan" and instead required a two-step process by which an assumption agreement must be executed prior to any modification agreement. CLS Mot. 18. Plaintiff counters that the applicable guidelines exempt certain transfers based on death, divorce, or inheritance from the two-step requirement and allow simultaneous assumption and modification in these circumstances. Opp'n 49–50. FCI's response that "just because something could happen does not mean that it did" is nonsensical in the context of a Rule 12 motion. *See* FCI Reply 8. Instead, there may be a question as to whether the Agreement is an enforceable contract or merely a "letter of intent" to pursue a later agreement, as CLS contends. *See* CLS Reply 13. However, plaintiff's allegations that she submitted a joint application for assumption and modification, which CLS responded to by sending specific material terms of a modified loan principal, interest rate, and monthly payment support a plausible inference that CLS and plaintiff intended to and did enter into a binding agreement for loss assumption *and* loan modification. *See* FAC ¶¶ 33, 35; *see also Mendez v. Bank of Am. Home Loans*

---

[9]     FCI's contention that plaintiff sent the documents to an incorrect fax number is a factual dispute not ripe for resolution on a Rule 12 motion. *See* FCI Mot. 17.

*Servicing, LP*, 840 F. Supp. 2d 639, 650 (E.D.N.Y. 2012) (finding loan servicer's "sole discretion" to determine whether it was satisfied and would proceed with modification agreement "would not render the agreement invalid").

FCI also argues that it is not bound by the Agreement because servicers are generally not parties to loan modification agreements. FCI Mot. 18; FCI Reply 8 (contending that "there still is no contract between FCI and Plaintiff, as required, because a mortgage servicer [] is not a party to the underlying Mortgage or Loan or a modification to the Loan"). To the contrary, the out-of-circuit caselaw FCI cites to support this argument merely states that where a servicer is not a party to a loan modification contract, a breach of contract claim cannot be alleged against that servicer. *See, e.g.*, *DiGiacomo v. Statebridge Co., LLC*, No. 14-cv-06694, 2015 WL 3904594, at *8 (D.N.J. June 25, 2015) ("Only a party to a contract can be found liable for breach of contract[.]"). In other words, a contract may only be enforced between parties to the contract. This is a basic principle of contract law and does not stand for the proposition that servicers cannot be bound by loan modification contracts as a matter of law. In fact, courts in this district have recognized claims for breach of contract arising out of a loan modification agreement between a servicer and mortgagor. *See, e.g.*, *Graham v. Select Portfolio Servicing, Inc.*, 156 F. Supp. 3d 491, 514 (S.D.N.Y. 2016) (finding allegations that servicer breached loan modification sufficient to state breach of contract claim under New York law). Here, plaintiff has alleged that "CLS approved the application and offered the Agreement, FAC ¶ 34, which comports with the text of the Agreement on CLS letterhead in which CLS is listed as the "lender," Opp'n Ex. C 4, 6. Accepting these allegations as true, which the Court must on a Rule 12 motion, FCI's argument that CLS, as servicer, was not a party to the Agreement is unavailing.

Furthermore, Nationstar's contention that as a successive servicer it is not bound by the alleged Agreement between plaintiff and CLS is unavailing. *See* Nationstar Mot. 15 (contending plaintiff "inadequately pleaded that she was ever in contract with Nationstar"). Successor loan servicers may inherit the contractual obligations of prior services. *See Mendez*, 840 F.Supp.2d at 651 (finding plaintiff's claim for breach of loan modification agreement entered into with prior loan servicer sufficiently pled as to successor loan servicer); *see also Block v. Seneca Mortg. Servicing*, 221 F. Supp. 3d 559, 578 (D.N.J. 2016) ("The factual question of what the relationships were between Defendants, and what obligations they incurred, must therefore be resolved on summary judgment or at trial."). Defendants have provided no indication why that would not be the case here. To the extent the Agreement allegedly changed the principal balance, re-amortized the loan and set the fixed interest rate, it is unclear why a loan servicer would not be bound by those terms.

Accordingly, plaintiff has sufficiently alleged that CLS entered into the Agreement and FCI and Nationstar as successor loan servicers are bound by that agreement.

### B.    *Loan Servicing*

RESPA's catch-all provision, subsection 11, applies to an error that "relates to or is connected with either (a) the loan servicer's receipt of payments from borrowers or (b) the loan servicer's making of payments to the loan's owners or third parties." *Naimoli*, 22 F.4th at 384. This unambiguous and broad language includes "any error that has some connection with or pertains to loan servicing." *Id.* at 383–84. Nonetheless, a "narrow exception to the catch-all provision" has been recognized, "which excludes challenges to the *merits* of a servicer's loss mitigation determination," but not errors made "while in pursuit of a loss mitigation option." *Id.* at 384 (emphasis added). *See also Mohamed v.*

17

*Nationstar Mortg., LLC*, No. 20-cv-00216, 2024 WL 4132351, at *3–4 (E.D.N.Y. Sept. 10, 2024) (finding that RESPA confers a private right of action for violations of 12 C.F.R. § 1024.35).

Defendants' contention that plaintiff fails to state a RESPA claim because errors regarding the terms of a modification agreement are not covered misses the mark. Plaintiff's RESPA claims are premised on defendants' alleged failure to service the loan modification by "refus[ing] to honor the terms of the Agreement." FAC ¶ 50. This supports a reasonable inference that plaintiff's RESPA claims concern defendants' "receipt of payments" from plaintiff—for example, whether defendant accepted payments pursuant to the Agreement—and are therefore related to errors with "some connection" to loan servicing. *See Naimoli*, 22 F.4th at 383–84. Indeed, similar allegations have been found sufficient to constitute covered errors. In *Mohamed*, the court found that the "alleged errors all stem[med] from the same fundamental contention: that [plaintiff] reached a binding agreement with Nationstar to modify the loan, and Nationstar failed to honor that agreement." *Mohamed*, 2024 WL 4132351, at *5. Because the plaintiff had otherwise sufficiently pled the existence of a valid modification agreement, the court found that the alleged errors were covered, including pursuant to subsection 11. *Id.* Accordingly, plaintiff has sufficiently alleged that defendants engaged in covered errors pursuant to RESPA and Regulation X.[10]

---

[10]    Nationstar also contends, on reply, that plaintiff's RESPA claims fail because Section 1024.38 does not confer a private right of action. Reply 6–7. However, plaintiff's RESPA claims arise out of Section 1024.35, which confers a private right of action. *Mohamed*, 2024 WL 4132351, at *3–4. To the extent plaintiff attempts to argue in her opposition that she has alleged separate violations of Sections 1024.38 and 1024.41, *see* Opp'n 47, that argument is without support in the amended complaint or the caselaw. *See Mohamed*, 2024 WL 4132351, at *6 (no private cause of action for Section 1024.38).

### C.    Notices of Error

Pursuant to Section 2605 of RESPA, borrowers may submit requests for information to loan servicers. 12 U.S.C. § 2605(e)(1); *Kapsis v. Am. Home Mortg. Servicing Inc.*, 923 F. Supp. 2d 430, 444 (E.D.N.Y. 2013). These requests are referred to as qualified written requests ("QWR") and must include the borrower's name and account information and "a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). Within 30 days of receiving a QWR, a loan servicer must "make appropriate corrections" to the borrower's account and "after conducting an investigation, provide the borrower with a written explanation or clarification" as to the purported error and provide the information requested or explain why the servicer does not have that information. 12 U.S.C. § 2605(e)(2). Additionally, Regulation X provides for parallel resolution procedures when a borrower submits a notice of error ("NOE") for a covered error, which, as discussed *supra*, includes loan servicing. 12 C.F.R. § 1024.35(a)–(e); *see also id.* § 1024.35 (e)(3)(i)(C) (providing servicers 30 days to respond to notices of errors regarding the catch-all covered error). QWRs and NOEs are generally synonymous.

Here, plaintiff has sufficiently alleged that she sent four QWRs, which also constitute NOEs, to defendants regarding the Agreement. In each of the First, Second, Third, and Fourth Letters (together, the "QWR/NOEs"), plaintiff alleges that she provided CLS, Nationstar, and/or FCI with a statement that her account was in error for failure to abide by the Agreement and requested documents relating to the Agreement. FAC ¶¶ 42, 47, 68, 74. This is sufficient to allege that plaintiff's letters to defendants constituted QWRs under Section 2605 and NOEs under Regulation X. *See Kapsis*, 923 F. Supp. 2d at

446 (finding plaintiff sufficiently alleged that he sent QWRs to servicer). Furthermore, plaintiff alleges that CLS and Nationstar each completely failed to respond to at least one of plaintiff's QWR/NOEs: CLS did not respond to the First or Second Letters, FAC ¶¶ 45, 68; and Nationstar did not respond to the Second Letter, FAC ¶¶ 49–50. Those alleged failures to respond to the QWR/NOEs constitute violations of both Section 2605 and Regulation X.

Additionally, plaintiff alleges that Nationstar's response to the First Letter was inadequate, as was FCI's response to the Fourth Letter. Opp'n 40–42. Regarding the First Letter, plaintiff alleges that Nationstar responded to her QWR/NOE regarding the Agreement by erroneously referring to an earlier modification that was denied prior to the Agreement. FAC ¶ 46. The Court is unpersuaded that this response would constitute a violation of RESPA's requirement that Nationstar conduct an "investigation" and explain why the information requested regarding the Agreement was not available. *See* 12 U.S.C. § 2605(e)(2)(C)(i). However, Nationstar's erroneous response may violate the requirement in Regulation X that servicers conduct a "*reasonable* investigation." 12 C.F.R. § 1024.35(e)(1)(i)(B). That is, plaintiff's allegations support the reasonable inference that Nationstar did not reasonably investigate the existence of the Agreement in responding to the First Letter. *Cf. Izmirligil v. Select Portfolio Servicing, Inc.*, No. 18-cv-07043, 2020 WL 1941319, at *6 (E.D.N.Y. Apr. 22, 2020) (finding plaintiff had adequately alleged a RESPA violation for a servicer's insufficient response to a QWR).

However, regarding the Fourth Letter, plaintiff alleges that FCI responded by stating that it has completed an "extensive search" of plaintiff's file and "failed to locate any evidence that CLS received the faxed" and executed Agreement. FAC ¶ 77. While plaintiff may disagree with FCI's response—and indeed, as discussed *supra*, FCI's

response may have been legally inaccurate as to its obligation to honor the Agreement—plaintiff's allegations do not support a reasonable inference that FCI failed to reasonably investigate the existence of the Agreement. Accordingly, plaintiff has failed to state an alleged RESPA or Regulation X violation against FCI.

      D.    *Damages*

In order to sufficiently plead a RESPA claim, plaintiff must allege actual damages proximately caused by a violation of the statute. *Lau v. Specialized Loan Servicing, LLC*, No. 23-cv-01385, 2023 WL 6135553, at *10 (S.D.N.Y. Sept. 20, 2023), *report and recommendation adopted as modified*, No. 23-cv-01385, 2024 WL 3219810 (June 28, 2024) ("RESPA does not support a claim for statutory damages or fees in the absence of actual damages."). To adequately allege actual damages, plaintiff "must allege injury and resulting damages that are proximately caused by the loan servicer's failure to adhere to its obligations under § 2605." *Manzolillo v. Nationstar Mortg., LLC*, No. 22-cv-03570, 2025 WL 411754, at *6 (E.D.N.Y. Feb. 6, 2025). Plaintiffs may also recover statutory damages of no more than $2,000 "in the case of a pattern or practice of noncompliance" of Section 2605. *Dolan v. Select Portfolio Servicing*, No. 03-cv-03285, 2016 WL 4099109, at *5 (E.D.N.Y. Aug. 2, 2016); *see also* 12 U.S.C. § 2605(f)(1)(B). "Courts commonly dismiss RESPA complaints at the pleading stage for failing to" adequately allege proximate cause for damages. *Bocci*, 2024 WL 3813756, at *8.

Here, plaintiff contends that defendants' alleged failure to correct the errors in response to her QWR/NOEs informing them of the Agreement caused her actual damages in the form of emotional distress, postal costs for repeated QWR/NOE letters, and increased fees and costs associated with the Foreclosure Action. Defendants counter that these damages were not proximately caused by the alleged RESPA violations and instead

were the product of plaintiff's own failure to make her monthly payments. CLS Reply 11–12; Nationstar Reply 8.

Plaintiff's allegation that she "has been under enormous stress, directly as a result of Defendants' failure to honor the Agreement, and their subsequent failures to correct this error," FAC ¶ 81, is sufficient to plead actual damages flowing from the alleged RESPA violation arising out of the "the form and timing of [defendants'] response to plaintiff's letters." *Roth v. CitiMortgage Inc.*, No. 12-cv-02446, 2013 WL 5205775, at \*8 (E.D.N.Y. Sept. 11, 2013), *aff'd*, 756 F.3d 178 (2d Cir. 2014). Contrary to defendants' contention that plaintiff's emotional harm is a result of her failure to pay her mortgage, plaintiff has expressly alleged that defendants' alleged RESPA violations have caused that harm. While plaintiff will need to clear a higher bar to establish causation at a later stage in this action, her allegations are sufficient at the pleading stage. *See Tanasi v. CitiMortgage, Inc.*, 257 F. Supp. 3d 232, 270 (D. Conn. 2017) (finding "plausible theory of causation" at pleading stage where plaintiffs alleged servicer "failed to respond to their inquiries about the servicing of their loan, leading to frustration and unnecessary stress during the foreclosure process").[11]

Likewise, plaintiff has sufficiently alleged that defendants' failure to correct the errors by honoring the Agreement has led to a specific harm in the Foreclosure Action: she alleges that Wilmington now seeks the entire balance of the loan in the Foreclosure

---

[11]    Defendants do not argue that emotional distress cannot constitute actual damages under RESPA. While there may be some uncertainty as to this issue, courts in this Circuit have found that it can. *Rosendale v. Mr. Cooper Grp. Inc.*, No. 19-cv-09263, 2021 WL 4066821, at \*12 (S.D.N.Y. Sept. 7, 2021) (assuming so without deciding and citing *In re Residential Capital, LLC*, 513 B.R. 446, 465 (Bankr. S.D.N.Y. 2014) as "collecting cases and concluding that emotional distress damages can constitute actual damages under RESPA").

Action, "thereby increasing even more the amount of money that it claims is presently due and owing under the loan." FAC ¶ 84. Plaintiff's allegations that CLS and Nationstar's non-existent or otherwise inadequate responses to her QWR/NOEs requesting that they honor the Agreement caused an increase in the current amount due on her loan is also sufficient to plead actual damages for her RESPA claims. *See Mohamed*, 2024 WL 4132351, at \*6–7 (finding that "expenses [plaintiff] incurred in defending the foreclosure action were proximately caused by Nationstar's mishandling of his loan modification" that "had already [been] entered into" with plaintiff); *cf. Manzolillo*, 2025 WL 411754, at \*7 (finding no proximate cause where plaintiff failed to show that she entered into a loan modification).

As to statutory damages, plaintiff has not sufficiently alleged that any defendant has engaged in a "pattern or practice" of RESPA violations. *Izmirligil*, 2020 WL 1941319, at \*8. As discussed *supra*, plaintiff sufficiently alleged one to two violations of RESPA as to defendants CLS and Nationstar. These alleged violations do not constitute a pattern or practice to support statutory damages under RESPA, especially where "many of [plaintiff's] QWRs asked for the same or similar information" from defendants. *Id.* (finding defendant servicer's four failures to respond to QWRs insufficient for statutory damages under RESPA).

*    *    *

Accordingly, defendants' motions are denied with respect to the RESPA claims against CLS and Nationstar but granted with respect to the RESPA claim against FCI.

### III.    Contract Claims

A claim for breach of contract pursuant to New York law requires allegations of: "(i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii)

failure of defendant to perform; and (iv) damages." *Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015). To recover a remedy in the form of specific performance, a plaintiff "must establish its willingness and ability to perform its remaining obligations, that Defendant was able to perform its obligations, and that there is no adequate remedy at law to address Defendant's nonperformance." *Sandstone Springs, LLC v. Virag Distribution, LLC*, 617 F. Supp. 3d 159, 176 (W.D.N.Y. 2022). Specific performance is available only where "the subject matter of a particular contract is unique and has no established market value." *Lanesborough 2000, LLC v. Nextres, LLC*, No. 23-cv-07584, 2025 WL 785071, at *5 (S.D.N.Y. Mar. 12, 2025). In New York, plaintiffs may recover both damages and specific performance for breach of contract claims. *Versatile Housewares & Gardening Sys., Inc. v. Thill Logistics, Inc.*, 819 F. Supp. 2d 230, 239 (S.D.N.Y. 2011) ("New York courts will award, in addition to specific performance of the contract, such items of damage as naturally flow from the breach[.]").

The primary dispute between the parties is whether plaintiff entered into a (i) loss assumption or (ii) loan modification contract with CLS in 2022. As discussed *supra*, they disagree over whether Fannie Mae procedures would have allowed for a simultaneous loss assumption and loan modification or if those procedures necessarily required a two-step process, which plaintiff does not allege occurred. CLS also argues that the documents sent to plaintiff on May 6, 2022, were not sufficiently definite to constitute a binding contract. However, as discussed *supra*, plaintiff has alleged facts sufficient to support the plausible inference that the 2022 agreement between herself and CLS constituted a binding contract for loss assumption *and* loan modification. Furthermore, plaintiff's allegations that CLS and its successor loan servicers—Nationstar and FCI, for purposes of this action—did not honor the loan modification is sufficient to plead breach of contract. As

to specific performance, plaintiff contends that monetary damages are insufficient to remedy the "risk[ of] losing her home to foreclosure." Opp'n 53. At a later stage in this action, plaintiff may be required to establish that foreclosure of her house cannot be remedied through money damages and therefore she is entitled to specific performance of the Agreement. However, plaintiff has sufficiently alleged a claim for specific performance at the pleading stage.

## CONCLUSION

For the reasons stated above, the Motions are **DENIED in part** and **GRANTED in part**. CLS and Nationstar's motions to dismiss are **DENIED** in their entirety. FCI's motion to dismiss is **GRANTED** as to plaintiff's RESPA claim but **DENIED** as to plaintiff's claims for breach of contract and specific performance.


**SO ORDERED.**



   /s/ Natasha C. Merle   
NATASHA C. MERLE
United States District Judge


Dated:     April 11, 2025
            Brooklyn, New York